**Alton Rowe STEWART**

v.

**Harry MOORE, etc., et al.**

**Civ. A. No. 70–C–127.**

United States District Court,
S. D. Texas,
Corpus Christi Division.

Aug. 6, 1971.

Bob Spann, Corpus Christi, Tex., for plaintiff.

R. W. Woolsey, Corpus Christi, Tex., for defendants.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

Plaintiff was a seaman on the shrimping vessel "BILL H," which was owned by Bill H., Inc. The sole stockholder was Harry Moore. The master of the vessel was Earl Thompson, sometimes referred to as "Shaler." At the time Plaintiff was injured, the "BILL H" and several other vessels were at anchor and tied together in the waters off Campeche, Mexico.

The Plaintiff, who did the cooking on the "BILL H," after preparing a meal for its crew and for the crews of the other vessels tied together, went to an adjoining vessel, the "CO I." Shortly afterwards, Thompson, who had been drinking some, like most others there, came on board the "CO I." He told Plaintiff, who was then having a drink with C. O. Collum, master of the "CO I," to lay the nets on the rail of the "BILL H." Plaintiff replied he would do that in a minute and went on talking to Collum. Thompson, apparently unprovoked and without warning, hit Plaintiff one time on the jaw and broke the bone. There followed some "cussing" and name calling, but no other blows were struck. Then Thompson returned to the "BILL H." Plaintiff stayed on the "CO I." The next morning, Collum told Thompson that Plaintiff's jaw was "broke" and he needed medical attention, but Thompson suggested his jaw was just "sprung" and offered no medical assistance.

Plaintiff stayed with the "CO I" as a passenger, and, after it had fished for about a month in the Gulf of Mexico, he returned with it to port at Aransas Pass, Texas. Within a few days, Plaintiff went to the marine hospital in Galveston, where a wisdom tooth was cut out and his teeth were wired. There was some uncertainty as to the periods of time involved, but the Court finds that Plaintiff spent thirty (30) days on the "CO I" before returning to Aransas Pass, and, after a few days in Aransas Pass, he was in the hospital for forty-two (42) days. A few days after Plaintiff left the hospital, he again went fishing. Since then, he has lost or suffered nothing more because of the injury.

■ Before discussing the fundamental issues, the Court will clarify the status of the Defendants Harry Moore and the corporation Bill H., Inc., both properly before this Court. The evidence is undisputed that Moore is the sole stockholder and president of the corporate Defendant and actively manages the operations of the vessel "BILL H." There is no evidence of any of the fact situations which would warrant this Court to disregard the corporate entity. 18 C.J. S. Corporations §§ 4, 6 and 7, p. 368 et seq. The Court finds, if Plaintiff is entitled to any recovery, that Bill H., Inc., is the responsible Defendant and this cause is dismissed as to the Defendant Harry Moore.

■ Returning to the question of responsibility, the law seems clear that an assault by the master of a vessel upon a seaman is negligence, even though the master may be acting beyond his authority, if the assault was committed in the course of discharging his duties and in furtherance of the ship owner's business. Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082 (1929);

Alpha Steamship Corporation, et al. v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L. Ed. 1086 (1929). Although there is no direct evidence as to why Thompson hit the Plaintiff, the logical inference is that, and the Court so finds, the master was aggravated by Plaintiff's refusal to obey his order to do a job for the benefit of the "BILL H." That job was to immediately return to the "BILL H" and spread the nets over the rail. There is no contradicting evidence. Consequently, this Court is of the opinion the *Jamison* and *Alpha Steamship* cases are controlling.

■ Since the Court has concluded that the Defendant Bill H., Inc., was negligent by virtue of Thompson's attack on Plaintiff, the Court must necessarily, under the facts in this case, find such attack was the proximate cause of Plaintiff's injury. Accordingly, there is no occasion for this Court to consider the applicability of the Cruelty to Seamen Statute (18 U.S.C. 2191) to the facts of this case, nor to consider the question of whether the testimony was sufficient to show Thompson to be unusually vicious and truculent, when judged by the usual standards of the calling, and thus unfit to serve as the master of the vessel "BILL H."

■ The Defendant Bill H., Inc., is obligated to Plaintiff for his damages resulting from the injury. There is no evidence of permanent disability, so loss of earnings and pain and suffering, such as it may have been, is all that the Court will take into account. It seems to the Court that, in a case of this kind, where there was no evidence of additional injury resulting from the failure of Defendant to furnish medical attention when it should have, any damages for such failure would necessarily be covered in any award for loss of earnings and for pain and suffering.

■ The Court finds that Plaintiff received no part of the catch, if any, of the "BILL H" and he was not entitled to and did not get any part of the catch of the "CO I." As a result, he lost wages from the time he left port as a crew member of the "BILL H," which was about three days before the injury, until he went back to work after his release from the hospital. Plaintiff also suffered pain and suffering in varying degrees for a period of about twelve (12) weeks and is entitled to recover therefor.

■ As to maintenance and cure, this Court concludes that, under the holding in Duplantis v. Williams-McWilliams Industries, Inc., E.D.La. (1969), 298 F. Supp. 13, 14, which follows Marine Drilling, Inc. v. Landry, 302 F.2d 127 (5 Cir., 1962), since Plaintiff paid none of his own expenses while on the "CO I" nor while in the marine hospital in Galveston, he cannot recover maintenance and cure from the Defendant owner of the vessel, except for those few days after he returned to Port Aransas and before he entered the marine hospital, and that short period before Plaintiff returned to work after being dismissed from the hospital. Plaintiff is entitled to recover for maintenance and cure for such period, which the Court finds to total seven (7) days. A fair dollar amount per day for maintenance and cure is eight dollars.

It is, therefore, ordered, adjudged and decreed that Plaintiff, Alton Rowe Stewart, do have and recover from Defendant Bill H., Inc., (1) the sum of Two Thousand Seven Hundred Sixty Dollars ($2,-760.00) for loss of earnings and for pain and suffering; and (2) the sum of Fifty-six Dollars ($56.00) for maintenance and cure.

This memorandum and order constitutes the Court's findings of fact and conclusions of law. The clerk will furnish each counsel with a copy of this memorandum and order and Plaintiff's counsel will prepare a proper and final judgment, which shall include the relief granted to Defendant Bill H., Inc., by interlocutory order signed the 18th day of January, 1971. Counsel for Defendant Bill H., Inc., will furnish to Plaintiff's counsel the wording of such portion of the judgment.